## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| BRETT YONALLY, individually and on behalf of all others similarly situated, | Court File No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT – CLASS ACTION** |
| FORTRA, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Brett Yonally ("Plaintiff"), individually and on behalf of a class of similarly situated persons, brings this Class Action Complaint and alleges the following against defendant Fortra, LLC ("Fortra" or "Defendant"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## **INTRODUCTION**

1.       Plaintiff brings this class action against Fortra for its failure to properly secure Plaintiff's and Class Members' personally identifiable information ("PII") and personal health information ("PHI"). The PII and PHI may have included names, addresses, medical billing and insurance information, certain medical information such as diagnoses and medication, and demographic information such as dates of birth and Social Security numbers.

2.      Fortra failed to comply with industry standards to protect information systems that contain PII. Plaintiff seeks, among other things, orders requiring Defendants to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3.      On February 1, 2023, cybersecurity expert Brian Krebs reported that Fortra had disclosed to its customers a "remote code injection exploit" affecting GoAnywhere MFT, Fortra's widely used file transfer application. Hackers use "remote code injection exploits" to remotely execute malicious code on their targets' computer systems.

4.      On or around February 10, 2023, the Russia-linked ransomware group Clop claimed to be responsible for attacks on GoAnywhere MFT, and to have stolen data exposed by the software from over 130 organizations over the course of the preceding ten days.

5.      On February 13, 2023, Community Health Systems, Inc. ("CHS") reported to the Securities and Exchange Commission ("SEC") that it was one of the customers whom Fortra had notified, that the PII and PHI of "certain patients of the Company's affiliates were exposed by Fortra's attacker," and that CHS estimated that "approximately one million individuals may have been affected by" the incident.

6.      On February 22, 2023, the U.S. Department of Health and Human Services' Health Sector Cybersecurity Coordination Center issued a "Sector Alert" emphasizing that Clop's claim referenced its ability to target health care systems.

7.      On February 28, 2023, Hatch Bank disclosed to the Maine and Montana Attorneys General that it was among the Fortra customers whose data had been exposed by the incident, and that it was disseminating notice to its own affected customers. Hatch Bank further disclosed to the Maine Attorney General that 139,493 of its customers were affected nationwide, and that the exposed data included their names and Social Security numbers.

8.      On March 6, 2023, CHS posted a notice regarding the Data Breach on its website, and purportedly alerted media outlets nationwide. The notice disclosed that the disclosed PII and PHI "may have included full name, address, medical billing and insurance information, certain medical information such as diagnoses and medication, and demographic information such as date of birth and social security number."

9.      As a result of Fortra's failure to implement and follow basic security procedures, Plaintiff's and Class Members' PII and PHI is now in the hands of criminals. Plaintiff and Class Members face a substantial increased risk of identity theft, both currently and for the indefinite future. Consequently, Plaintiff and Class Members have had to spend, and will continue to spend, significant time and money in the future to protect themselves due to Fortra's failures.

10.     Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII was stolen in the Data Breach. Plaintiff seeks remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief including substantial improvements to Fortra's data security systems.

## PARTIES

11.    Plaintiff Brett Yonally resides in San Francisco, California. Mr. Yonally is a long-time customer of HM Bradley, Inc., a financial technology company for which Hatch Bank provided banking services. On February 28, 2023, Hatch Bank sent Mr. Yonally a letter disclosing that information he had shared with HM Bradley was exposed by the Data Breach. Mr. Yonally subsequently withdrew the majority of the funds in his HM Bradley account.

12.    Defendant Fortra, LLC is a Delaware limited liability company, with its principal office in Eden Prairie, Minnesota.

13.    Fortra describes itself as a "positive changemaker for cybersecurity" that "create[es] a stronger line of defense from a single provider."[1] Due to the nature of its services, Fortra acquires and electronically stores PII and PHI.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, there are more than 100 proposed Class Members, and minimal diversity exists as Fortra is a citizen of a state different from that of at least one Class Member.

15.    This Court has personal jurisdiction over Fortra because it is a resident of the State of Minnesota.

---

[1] Meet Fortra (available at https://www.fortra.com/about) (last accessed Mar. 23, 2023).

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the conduct alleged herein occurred in, were directed to, and/or emanated from this District. Venue is additionally proper because Fortra transacts business and may be found in this District.

## FACTUAL ALLEGATIONS

### The Data Breach

17.     Fortra provides information technology services for hundreds of businesses worldwide. As a vendor to financial institutions and healthcare providers, Fortra is required to ensure that PII and PHI are not disclosed or disseminated to unauthorized third parties without the express written consent of the individual owners of that PII and PHI.

18.     In late January of 2023, Fortra disclosed to its customers a "remote code injection exploit" affecting GoAnywhere MFT, Fortra's widely used file transfer application. Hackers use "remote code injection exploits" to remotely execute malicious code on their targets' computer systems.

19.     On February 28, 2023, Hatch Bank disclosed to the Maine and Montana Attorneys General that it was among the Fortra customers whose data had been exposed by the incident, and that it was disseminating notice to its own affected customers. Hatch Bank further disclosed to the Maine Attorney General that 139,493 of its customers were affected nationwide, and that the exposed data included their names and Social Security numbers.

20.     Hatch Bank's submission to the Maine Attorney General disclosed the following:

> On January 29, 2023, Fortra experienced a cyber incident when they learned of a vulnerability located in their software. On February 3, 2023, Hatch Bank was notified by Fortra of the incident and learned that its files contained on Fortra's GoAnywhere site were subject to unauthorized access. Fortra's investigation determined that there was unauthorized access to the site account from January 30, 2023, to January 31, 2023. Hatch Bank immediately took steps to secure its files and then launched a diligent and comprehensive review of relevant files to determine the information that may have been impacted. Hatch Bank then worked to identify contact information for the impacted individuals. That process completed on February 7, 2023.[2]

21.     Fortra, on the other hand, has not publicly disclosed any information regarding the Data Breach. It has not explained why PII and PHI were stored on systems without adequate security, the deficiencies in the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and whether Fortra knows if the data has been further disseminated.

22.     Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Fortra has taken to secure the PII and PHI still in its possession. Plaintiff seeks to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiff's and Class Members' interests, and ensure that Fortra has proper measures in place to prevent similar incidents from occurring in the future.

---

[2] *See* Notice of Data Event (available at https://apps.web.maine.gov/online/aeviewer/ME/40/4cfbf86f-8d04-4296-9195-81b874ba939a.shtml) (last accessed Mar. 24, 2023).

**Fortra's Privacy Claims**

23.     The Health Insurance Portability and Accountability Act ('HIPAA')

requires that Fortra maintain strict privacy practices. Fortra's website addresses in detail

the "Consequences of Not Complying with HIPAA":

> The need to share health data is there – by hospitals, clinics, insurers, research facilities, pharmacies, and public health organizations. However, very specific guidelines around how this information can be stored and shared are needed to ensure patient privacy. Breaching the trust of individuals who've entrusted their data comes with consequences.

> According to HIPAA security laws and regulations for professionals, the Office for Civil Rights (OCR) within the HSS is responsible for enforcing Privacy and Security Rules, establishing compliance requirements as well as for levying civil monetary penalties.

> Organizations that fail to comply with HIPAA regulations can see substantial fines levied against them, even if no actual PHI breach occurs. In addition, criminal charges and even civil action lawsuits can be filed following a breach. And it should be noted: ignorance of HIPAA compliance requirements doesn't pass muster as a defense against violations sanctions. The OCR issues fines whether a violation is inadvertent or is the result of willful neglect.[3]

24.     Fortra's website includes multiple specific claims about the security of its

services. One of its executives claims that "[o]rganizations that neglect to

prioritize . . . security controls risk being brought to their knees by data breaches,

ransomware, or other cyber attacks that prey on security vulnerabilities. . . . If your

organization has no plans to address these risks, we strongly urge you to rethink your

---

[3] HIPAA Compliance (available at https://www.fortra.com/solutions/data-security/compliance/hipaa-compliance) (last accessed Mar. 23, 2023).

approach."[4] The same page claims Fortra's standing as "the positive changemakers and your relentless ally to provide peace of mind through every step of your cybersecurity journey."[5]

25.    With respect to GoAnywhere MFT in particular, Fortra claims that its "secure file transfer solution" will "[s]ecure sensitive data, like PHI, PII, and card information, in motion and at rest."[6] The same page touts GoAnywhere MFT's value in the banking & finance and healthcare industries in particular.[7]

**The Healthcare Sector is a Primary Target for Data Breaches**

26.    Fortra was on notice that companies in the healthcare industry are susceptible targets for data breaches.

27.    Fortra was also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced persistent threats (APTs)" and pointed out that "[t]he biggest

---

[4] Over One Quarter of Organizations Have No Plans to Implement Cybersecurity Measures Despite Cybersecurity Remaining Top Concern (available at https://www.fortra.com/resources/press-releases/over-one-quarter-organizations-have-no-plans-implement-cybersecurity) (last accessed Mar. 23, 2023).

[5] *Id.*

[6] GoAnywhere MFT (available at https://www.fortra.com/products/secure-managed-file-transfer-software) (last accessed Mar. 23, 2023).

[7] *Id.*

8

vulnerability was the perception of IT healthcare professionals' beliefs that their current

perimeter defenses and compliance strategies were working when clearly the data states

otherwise." The same warning specifically noted that "[t]he FBI has observed malicious

actors targeting healthcare related systems, perhaps for the purpose of obtaining Protected

Health Information (PHI) and/or PII."[8]

28.    The number of reported North American data breaches increased by over

50 percent in 2021, from 1,080 in 2020[9], to 1,638 in 2021.[10] As a recent report reflects,

"[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the

more impactful ransomware campaigns."[11]

29.    At the end of 2018, the healthcare sector ranked second in the number of

data breaches among measured sectors, and had the highest rate of exposure for each

breach.[12] Indeed, when compromised, healthcare-related data is among the most sensitive

and personally consequential. A report focusing on healthcare breaches found that the

---

[8] Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification (available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf) (last accessed Mar. 23, 2023).

[9] *See* Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/ business/resources/reports/2021-data-breach-investigations-report.pdf (last accessed Mar. 23, 2023).

[10] *See* Verizon 2022 Data Breach Investigations Report, at 83 (available at https://www.verizon.com/ business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf) (last accessed Mar. 23, 2023).

[11] *Id.* at 62.

[12] *2018 End-of-Year Data Breach Report*, Identity Theft Resource Center (available at https://www.idtheftcenter.org/2018-data-breaches) (last accessed Mar. 23, 2023).

"average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[13] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy.[14]

30.    Healthcare-related breaches have persisted because criminals see electronic patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security leaders reported having a significant security incident in the previous 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[15] "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and

---

[13] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010) (available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/) (last accessed Mar. 23, 2023).

[14] *Id.*

[15] *2019 HIMSS Cybersecurity Survey* (available at https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf) (last accessed Mar. 23, 2023).

insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[16]

31.    The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[17]

32.    As a major vendor to healthcare providers, Fortra knew, or should have known, the importance of safeguarding Class Members' PII and PHI entrusted to it and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Class Members in the event of a breach. Fortra failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

**Fortra Stores Plaintiff's and Class Members' PII and PHI**

33.    Fortra obtains and stores a massive amount of PII and PHI. As a condition of engaging in financial and health services, Fortra's customers require that their own customers and patients entrust it with highly confidential PII and PHI.

---

[16] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, Apr. 4, 2019 (available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks) (last accessed Mar. 23, 2023).

[17] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n (Oct. 4, 2019) (available at https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals) (last visited Mar. 23, 2023).

34.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Fortra assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

35.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and, as current and former customers and patients of Fortra's customers, they rely on Fortra to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

36.    Fortra was aware that the PII and PHI it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

37.    PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[18] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[19]

---

[18] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Mar. 23, 2023).

[19] Center for Internet Security, *Data Breaches: In the Healthcare Sector* (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last accessed Mar. 23, 2023).

12

38.     PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

39.     Medical identify theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[20]

40.     The ramifications of Fortra's failure to keep Class Members' PII and PHI secure are long-lasting and severe. Once PII and PHI is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

41.     Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

---

[20] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last accessed Mar. 23, 2023).

42.    Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened. [21] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[22]

43.    Here, not only PHI, but also Social Security numbers, were compromised. The Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt-collection calls commence months, or even years, later.[23] This time-lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used, compounds an identity theft victim's ability to detect and address the harm.

44.    Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits

---

[21] *See* Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last accessed Mar. 23, 2023).

[22] Experian, The Potential Damages and Consequences of Medical Identityy Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last accessed Mar. 23, 2023).

[23] *Identity Theft and Your Social Security Number*, Social Security Administration (available at http://www.ssa.gov/pubs/EN-05-10064.pdf) (last accessed Mar. 23, 2023).

until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

45.    Changing or cancelling a stolen Social Security number is extremely difficult. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraudulent activity to obtain a new number.

46.    Even then, a new Social Security number may not be effective. According to the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[24]

47.    Fortra knew, or should have known, the importance of safeguarding Class Members' PII and PHI entrusted to it and of the foreseeable consequences if its data-security systems were breached. This includes the significant costs that would be imposed on Class Members because of a breach. Fortra failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[24] Bryan Naylor, Victims of Social Security Number Theft Find It's Hard to Bounce Back, NPR (Feb. 9, 2015) (available at http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft) (last visited Mar. 23, 2023).

**The Data Breach Exposed Plaintiff and Class Members**
**to Identity Theft and Out-of-Pocket Losses**

48.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

49.    Despite all the publicly available knowledge of the known and foreseeable consequences of disclosure of PII and PHI, Fortra's policies and practices with respect to maintaining the security of Class Members' PII and PHI were reckless, or, at the very least, negligent.

50.    In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and, for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of Fortra's misfeasance.

51.    Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[25]

52.    As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and

---

[25]    2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last accessed Mar. 23, 2023).

other actual harm for which they are entitled to damages, including, but not limited to, the following:

    a.   losing the inherent value of their PII and PHI;

    b.   identity theft and fraud resulting from the theft of their PII and PHI;

    c.   costs associated with the detection and prevention of identity theft;

    d.   costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

    e.   lowered credit scores resulting from credit inquiries following fraudulent activities;

    f.   costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

    g.   the continued imminent injury flowing from potential fraud and identify theft posed by their PII and PHI being in the possession of one or more unauthorized third parties.

**Fortra's Lax Security Violates HIPAA**

53.    Fortra had a non-delegable duty to ensure that all PHI it collected and stored was secure.

54.    Fortra is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

55.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

56.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

57.    HIPAA requires that Fortra implement appropriate safeguards for this information.

58.    Despite these requirements, Fortra failed to comply with its duties under HIPAA and its own Privacy Practices. In particular, Fortra failed to:

    a.  maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.  adequately protect Plaintiff's and Class Members' PHI;

c.  ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d.  implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e.  implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f.  implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g.  protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h.  ensure compliance with the electronic PHI security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i.  train all members of its workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

59.     Fortra failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiff's and Class Members' PHI.

**Fortra Violated FTC Guidelines**

60.     The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Fortra from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

61.     The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[26]

62.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[27] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks;

---

[26] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Mar. 23, 2023).

[27] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Mar. 23, 2023).

understand their network's vulnerabilities; and implement policies to correct any security problems.

63.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[28]

64.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data-security obligations.

65.     Fortra failed to properly implement basic data-security practices. Fortra's failure to employ reasonable and appropriate measures to protect against unauthorized access to Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

66.     Fortra was at all times fully aware of its obligation to protect Class Members' PII and PHI because of its customers' positions as financial institutions and

---

[28]     FTC, *Start With Security*, *supra*.

healthcare providers. Fortra was also aware of the significant repercussions that would result from its failure to do so.

## CLASS ACTION ALLEGATIONS

67.    Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a Class as defined below:

> All persons in the United States whose PII and/or PHI was exposed by the Data Breach that was disclosed by Fortra on or around February 1, 2023.

68.    Plaintiff further seeks certification of a California Subclass as defined below:

> All persons residing in California whose PII and/or PHI was exposed by the Data Breach that was disclosed by Fortra on or around February 1, 2023.

69.    Excluded from the Class are Fortra, any entity in which Fortra has a controlling interest, and Fortra's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

70.    Plaintiff reserves the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiff.

71.    **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. CHS disclosed that over one million of its patients were affected by the Data Breach. All Class Members' names and addresses are available from Fortra's and/or its customers' records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice-dissemination methods.

72.    **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether and to what extent Fortra had a duty to protect the PII and PHI of Class Members;

b.  Whether Fortra was negligent in collecting and storing Plaintiff's and Class Members' PII and PHI;

c.  Whether Fortra had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

d.  Whether Fortra took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII and PHI;

e.  Whether Fortra failed to adequately safeguard the PII and PHI of Class Members;

f.  Whether Fortra failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g.  Whether Fortra adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

h.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Fortra's wrongful conduct;

     a.  Whether Plaintiff and Class Members are entitled to restitution because of Fortra's wrongful conduct;

     b.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

     c.  Whether Plaintiff and Class Members are entitled to identity-theft protection for their respective lifetimes.

73.   **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII and PHI, like that of every other Class Member, was disclosed by Fortra. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Fortra's common misconduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

74.   **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Fortra to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in data-breach litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

75. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Fortra has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Fortra's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Fortra's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

76. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class-action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class-action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like Fortra. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

77. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Fortra would necessarily gain an unconscionable advantage in non-class

litigation, since Fortra would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

78.     The litigation of Plaintiff's claims is manageable. Fortra's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

79.     Adequate notice can be given to Class Members directly using information maintained in Fortra's and/or its customers' records.

80.     Unless a class-wide injunction is issued, Fortra may continue to maintain inadequate security with respect to the PII and PHI of Class Members, Fortra may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Fortra may continue to act unlawfully as set forth in this Complaint.

**COUNT I**
**NEGLIGENCE**
**(On behalf of Plaintiff and the Class)**

81.     Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

82.     As a condition of their utilizing Fortra's customers' services, Class Members were obligated to provide Fortra with certain PII and PHI, including their dates of birth, Social Security numbers, personal medical information, and other PII and PHI.

83.     Plaintiff and the Class Members entrusted their PII and PHI to Fortra on the premise and with the understanding that Fortra would safeguard their information and not disclose that information to unauthorized third parties.

84.     Fortra has full knowledge of the sensitivity of PII and PHI and the types of harm that Plaintiff and Class Members could and would suffer if PII and PHI were wrongfully disclosed.

85.     Fortra knew or should have known that the failure to exercise due care in the collection, storage, and use of Class Members' PII and PHI involved an unreasonable risk of harm to Plaintiff and Class Members.

86.     Fortra had a duty to exercise reasonable care in safeguarding, securing, and protecting Plaintiff's and Class Members' PII and PHI from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Fortra's security protocols to ensure that Plaintiff's and Class Members' information in Fortra's possession was adequately secured and protected, and that employees tasked with maintaining such information were adequately trained as to proper measures regarding the security of Class Members' PII and PHI.

87.     Fortra had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' PII and PHI.

27

88.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Fortra, of failing to use reasonable measures to protect PII and PHI. The FTC publications and orders described above also form part of the basis of Fortra's duty in this regard.

89.     Fortra violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' PII and PHI and failing to comply with relevant industry standards. Fortra's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class Members.

90.     A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly considering the growing number of data breaches of health-care providers.

91.     Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Fortra knew or should have known of the inherent risks in collecting and storing Plaintiff's and Class Members' PII and PHI, the importance of providing adequate security for that information, and that Fortra had inadequate employee training and education and information technology security protocols in place to secure Plaintiff's and Class Members' PII and PHI.

92.     Fortra's misconduct created a foreseeable risk of harm to Plaintiff and Class Members. Fortra's misconduct included, but was not limited to, its failure to take

28

the steps necessary to prevent the Data Breach. Fortra's misconduct also included its decisions not to comply with industry standards for the safekeeping and disclosure of Plaintiff's and Class Members' PII and PHI.

93.    Plaintiff and Class Members had no ability to protect their PII and PHI that was in Fortra's possession.

94.    Fortra was in a position to protect against the harm that Plaintiff and Class Members suffered as a result of the Data Breach.

95.    Fortra had and continues to have a duty to adequately disclose that Plaintiff's and Class Members' PII and PHI within Fortra's possession might have been compromised, how it was compromised, and precisely the types of information that were compromised—and when it was compromised. Such notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PHI by unauthorized parties.

96.    Fortra has admitted that Plaintiff's and Class Members' PII and PHI was wrongfully disclosed to unauthorized parties because of the Data Breach.

97.    Fortra, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII and PHI during the period in which that information was within Fortra's possession or control.

98.    Fortra failed to heed industry warnings and alerts to provide adequate safeguards to protect Class Members' PII and PHI in the face of increased risk of theft.

29

99.     Fortra, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Class Members' PII and PHI.

100.     Fortra, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

101.     But for Fortra's wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff's and Class Members' PII and PHI would not have been compromised.

102.     There is a close causal connection between Fortra's failure to implement security measures to protect Plaintiff's and the Class Members' PII and PHI and the harm suffered or risk of imminent harm suffered by Plaintiff and Class Members. Unauthorized parties gained access to Plaintiff's and Class Members' PII and PHI as the proximate result of Fortra's failure to exercise reasonable care in safeguarding that information by adopting, implementing, and maintaining appropriate security measures.

103.     As a direct and proximate result of Fortra's negligence, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with the effort expended addressing and attempting to mitigate the actual and future

30

consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remains in Fortra's possession and is subject to further unauthorized disclosures so long as Fortra fails to undertake appropriate and adequate measures to protect that information; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (ix) the diminished value of Fortra's services that Plaintiff and Class Members received.

104.    As a direct and proximate result of Fortra's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT II**
**NEGLIGENCE PER SE**
**(On behalf of Plaintiff and the Class)**

105.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

106.    Pursuant to the FTC Act, 15 U.S.C. § 45, Fortra had a duty to provide adequate data-security practices, including in connection with its sale of its services to Plaintiff's and Class Members' pediatric practices.

107.    Pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1302d, *et seq.*, Fortra had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' PII/PHI.

108.    Fortra breached its duties to Plaintiff and Class Members under the FTC Act and HIPAA, among other laws, by failing to provide fair, reasonable, or adequate data security in connection with the sale and use of its services, to safeguard Plaintiff's and Class Members' PII/PHI.

109.    Fortra's failure to comply with applicable laws and regulations constitutes negligence per se.

110.    But for Fortra's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

111.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Fortra's breach of its duties. Fortra knew or should have known that it was failing to meet its duties, and that its breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII/PHI.

112.    As a direct and proximate result of Fortra's negligent conduct, Plaintiff and Class Members face an increased risk of future harm.

113.    As a direct and proximate result of Fortra's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT III**
**VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. CIV. CODE § 17200,** *et seq.* **("CCPA")**
**(On Behalf of Plaintiff and the California Subclass)**

114.     Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

115.     Fortra is a "person," as defined by Cal. Bus. & Prof. Code § 17201.

116.     Fortra violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

117.     Fortra's "unfair" acts and practices include:

    a.   Failing to implement and maintain reasonable security measures to protect Plaintiff and California Subclass members' PII and PHI from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach. Fortra failed to identify foreseeable security risks and remediate identified security risks. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and the California Subclass, whose PII and PHI has been compromised.

    b.   Failing to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, HIPAA, and California's Consumer Records Act, Cal. Civ. Code § 1798.81.5.

c.  Failing to implement and maintain reasonable security measures also led to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Fortra's inadequate security, consumers could not have reasonably avoided the harms that Fortra caused.

d.  Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

118.  Fortra has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data-security measures) and 1798.82 (requiring timely breach notification), California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq.*, the FTC Act, 15 U.S.C. § 45, HIPAA, and California common law.

119.  Fortra's unlawful, unfair, and deceptive acts and practices include:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and California Subclass members' PII and PHI, which was a direct and proximate cause of the Data Breach;

b.  Failing to identify foreseeable security and privacy risks and remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;

c.  Failing to comply with common-law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45,

HIPAA, and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and California Subclass members' PII and PHI, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common-law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and California Subclass members' PII and PHI; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common-law and statutory duties pertaining to the security and privacy of Plaintiff's and California Subclass members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, and California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*

120.    Fortra's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of consumers' PII and PHI.

35

121.    As a direct and proximate result of Fortra's unfair, unlawful, and fraudulent acts and practices, Plaintiff and California Subclass members were injured and lost money or property, including: the prices they paid for goods and services to Fortra's customers; losses from fraud and identity theft; costs for credit-monitoring and identity-protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their PII and PHI; and an increased, imminent risk of fraud and identity theft.

122.    Fortra acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and California Subclass members' rights. Breaches within the financial and healthcare industries put Fortra on notice that its security and privacy protections were inadequate.

123.    Plaintiff and California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Fortra's unfair, unlawful, and fraudulent business practices or use of their PII and PHI; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

124.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

36

125.    Plaintiff and Class Members have an interest, both equitable and legal, in their PHI and PII that was conferred upon, collected by, and maintained by Fortra and that was stolen in the Data Breach.

126.    Fortra benefitted from the conferral upon it of Plaintiff's and Class Members' PII and PHI, and by its ability to retain and use that information. Fortra understood that it so benefitted.

127.    Fortra also understood and appreciated that Plaintiffs' and Class Members' PHI and PII was private and confidential and that its value depended upon Fortra maintaining its privacy and confidentiality.

128.    But for Fortra's willingness and commitment to maintain its privacy and confidentiality, that PHI and PII would not have been transferred to and entrusted with Fortra. Further, if Fortra had disclosed that its data-security measures were inadequate, Fortra would not have been permitted to continue in operation by regulators and the healthcare marketplace.

129.    As a result of Fortra's wrongful conduct as alleged in this Complaint (including, among other things, its utter failure to employ adequate data-security measures, its continued maintenance and use of Plaintiff's and Class Members' PHI without having adequate data-security measures, and its other conduct facilitating the theft of that PHI and PII), Fortra has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

130.    Fortra's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of

Plaintiff's and Class Members' sensitive PHI and PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers.

131.    Under the common law doctrine of unjust enrichment, it is inequitable for Fortra to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiff's and Class Members' PHI and PII in an unfair and unconscionable manner. Fortra's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

132.    The benefit conferred upon, received, and enjoyed by Fortra was not conferred officiously or gratuitously, and it would be inequitable and unjust for Fortra to retain the benefit.

### COUNT V
### INJUNCTIVE/DECLARATORY RELIEF
#### (On behalf of Plaintiff and the Class)

133.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

134.    Fortra owes a duty of care to Plaintiff and Class Members requiring it to adequately secure PII and PHI.

135.    Fortra still stores Plaintiff's and Class Members' PII and PHI.

136.    Since the Data Breach, Fortra has announced no specific changes to its data-security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

137.    Fortra has not satisfied its legal duties to Plaintiff and Class Members.

138. Actual harm has arisen in the wake of the Data Breach regarding Fortra's duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PII and PHI, and Fortra's failure to address the security failings that led to that exposure.

139. Plaintiff, therefore, seeks a declaration: (a) that Fortra's existing security measures do not comply with its duties of care to provide adequate security; and (b) that to comply with its duties of care, Fortra must implement and maintain reasonable security measures, including, but not limited to, the following:

    a. ordering that Fortra engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Fortra's systems on a periodic basis, and ordering Fortra to promptly correct any problems or issues detected by such third-party security auditors;

    b. ordering that Fortra engage third-party security auditors and internal personnel to run automated security monitoring;

    c. ordering that Fortra audit, test, and train its security personnel regarding any new or modified procedures;

    d. ordering that Fortra segment Plaintiff and Class Member data by, among other things, creating firewalls and access controls so that if one area of Fortra's system is compromised, hackers cannot gain access to other portions of Fortra's systems;

e.  ordering that Fortra purge, delete, and destroy in a secure manner Plaintiff and Class Member data not necessary for its provision of services;

f.  ordering that Fortra conduct regular computer-system scanning and security checks;

g.  ordering that Fortra routinely and continually conduct internal training and education to inform internal-security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.  ordering Fortra to meaningfully educate its current, former, and prospective customers about the threats their customers and patients face because of the loss of their PII and PHI to third parties, as well as the steps they must take to protect themselves.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a.  for an Order certifying the Class as defined herein, and appointing Plaintiff and his counsel to represent the Class;

b.  for equitable relief enjoining Fortra from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c.  for equitable relief compelling Fortra to use appropriate cyber-security methods and policies with respect to PII and PHI collection, storage, and

protection, and to disclose with specificity to Class Members the types of PII and PHI compromised;

d.  for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e.  for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.  for prejudgment interest on all amounts awarded; and

g.  such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: March 27, 2023

**THOM ELLINGSON, PLLP**

*/s/ Aaron R. Thom*
Aaron R. Thom (#0392646)
Samantha J. Ellingson (#0397448)
athom@thomellingson.com
sellingson@thomellingson.com
Thom Ellingson, PLLP
825 Nicollet Mall, Suite 950
Minneapolis, MN 55402
Phone: (612) 286-0505
Fax: (612) 601-8955

**BAILEY GLASSER LLP**
Bart D. Cohen (*pro hac vice*
application forthcoming)
1622 Locust Street
Philadelphia, PA  19103
(215) 274-9420
bcohen@baileyglasser.com

*Attorneys for Plaintiff and the
Proposed Class*